UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD WANDEL, Derivatively on Behalf of CABLEVISION SYSTEMS CORPORATION,<br><br>                Plaintiff,<br><br>v.<br><br>CHARLES D. FERRIS, RICHARD H. HOCHMAN, VICTOR ORISTANO, THOMAS V. REIFENHEISER, JOHN R. RYAN, VINCENT TESE, RAND V. ARASKOG, FRANK J. BIONDI, CHARLES F. DOLAN, JAMES L. DOLAN, MARIANNE DOLAN WEBER, PATRICK F. DOLAN, BRIAN G. SWEENEY, THOMAS C. DOLAN, WILLIAM BELL, ROBERT LEMLE, SHEILA MAHONY, JOHN MALONE, LEO J. HINDERY, JR., ANDREW ROSENGARD and LEONARD TOW,<br><br>                Defendants,<br>    and<br><br>CABLEVISION SYSTEMS CORPORATION, a NEW YORK corporation,<br><br>                Nominal Defendant. | CIVIL ACTION NO.<br>06-cv-4130-DGT-AKT |

(Additional captions on next page)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS PATRICIA L. FULCO AND ARNOLD WANDEL FOR AN ORDER CONSOLIDATING AND ORGANIZING THE DERIVATIVE ACTIONS AND <u>APPOINTING CO-LEAD COUNSEL</u>**

| | |
|---|---|
| PATRICIA L. FULCO, Derivatively on Behalf of CABLEVISION SYSTEMS CORP.,<br><br>      Plaintiff,<br><br>v.<br><br>CHARLES F. DOLAN, JAMES L. DOLAN, PATRICK F. DOLAN, MARIANNE DOLAN WEBER, BRIAN G. SWEENEY, RAND V. ARASKOG, FRANK J. BIONDI, CHARLES D. FERRIS, RICHARD H. HOCHMAN, VICTOR ORISTANO, THOMAS V. REIFENHEISER, JOHN R. RYAN, VINCENT TESE, LEONARD TOW, ROBERT S. LEMLE, WILLIAM J. BELL, and ANDREW B. ROSENGARD,<br><br>      Defendants,<br>  and<br><br>CABLEVISION SYSTEMS CORP.,<br><br>      Nominal Defendant. | **CIVIL ACTION NO.**<br>**06-cv-4180-ADS-ARL** |
| SIMA MILGRAUM, Derivatively on Behalf of CABLEVISION SYSTEMS CORP.,<br><br>      Plaintiff,<br><br>v.<br><br>JAMES L. DOLAN, ROBERT S. LEMLE, ANDREW B. ROSENGARD, WILLIAM J. BELL, VICTOR ORISTANO, RICHARD D. HOCHMAN, VINCENT TESE, and JOHN TATTA,<br><br>      Defendants,<br>  and<br><br>CABLEVISION SYSTEMS CORP.,<br><br>      Nominal Defendant. | **CIVIL ACTION NO.**<br>**06-cv-4740-ADS-ARL** |

**I.      INTRODUCTION**

Patricia L. Fulco and Arnold Wandel (collectively, "Plaintiffs"), through their undersigned counsel, respectfully submit this memorandum of law in support of their motion for an Order consolidating and organizing the derivative actions and appointing Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Federman & Sherwood as Co-Lead Counsel (collectively, "Co-Lead Counsel").

Plaintiffs' motion should be granted. As shown below, Proposed Co-Lead Counsel is the most qualified counsel to lead and organize the shareholder derivative claims in this matter. The accompanying proposed Order provides for the appropriate initial steps in the organization of these actions, as well as for the designation of Co-Lead Counsel.

**II.     PROCEDURAL CONTEXT AND SUMMARY OF THE ALLEGATIONS AGAINST THE DEFENDANTS**

On August 18, 2006, Ms. Fulco filed a shareholder derivative complaint in the United States District Court for the Eastern District of New York on behalf of Nominal Defendant Cablevision Systems Corporation ("Cablevision" or the "Company"), civil action number 06-cv-4180-ADS-ARL, against: Charles F. Dolan, James L. Dolan, Patrick F. Dolan, Marianne Dolan Weber, Brian G. Sweeney, Rand V. Araskog, Frank J. Biondi, Charles D. Ferris, Richard H. Hochman, Victor Oristano, Thomas V. Reifenheiser, John R. Ryan, Vincent Tese, Leonard Tow, Robert S. Lemle, William J. Bell, and Andrew B. Rosengard (collectively, "Defendants").

Earlier that same day, on August 18, 2006, Mr. Wandel filed a similar shareholder derivative complaint in the United States District Court for the Eastern District of New York, civil action number 06-cv-4130-DGT-AKT. To date, a total of three shareholder derivative cases have been filed in this Court. In addition, several related shareholder derivative actions have been filed in Delaware and New York State Supreme Court, including: *Teachers Retirement*

1

*System of Louisiana v. James L. Dolan, et al.*, Delaware Court of Chancery, civil action number 2353-N; *Teamsters Local 456 Annuity Fund v. James L. Dolan, et al.*, New York State Supreme Court, Nassau County, civil action number 06-12743; *Robert Greenbaum v. James L. Dolan, et al.*, New York State Supreme Court, Nassau County, civil action number 06-012836; and *Toby Spitz v. James L. Dolan, et al.*, New York State Supreme Court, Nassau County, civil action number.[1]

The shareholder derivative actions pending before this Court all arise out of the unlawful grant of stock options by Cablevision to its senior executives, including awarding options to a deceased executive.[2] Specifically, Cablevision's stock option plan only allowed for the granting of such options at the fair market price of Cablevision stock on the date of the option grants. Cablevision's senior executives, however, not satisfied with the opportunity to participate in the good fortunes of the Company, systematically over the course of many years engaged in a scheme to backdate option grants to dates on which Cablevision stock was trading at lower prices than prevailed at the time of the grant. This scheme resulted in Defendants reaping millions of dollars in guaranteed profits contrary to the terms of the stock option plan and in violation of their fiduciary duties to the Company. Cablevision was also forced to announce a restatement of its financial results to account for the below market grants as compensation expense. Just last week, Cablevision filed an amended annual report of Form 10-K for 2005 with the Securities and Exchange Commission ("SEC") that conceded that "[t]he Company's Board of Directors and senior management believe that the practices related to the granting of options

---

[1] On or about September 18, 2006, certain Defendants named in the various actions have moved to stay the state court actions in favor of these federal court actions.

[2] On September 22, 2006, an article published in the *Wall Street Journal*, "Cablevision Gave Backdated Grant To Dead Official," announced that Cablevision had admitted to awarding options to a vice chairman, Mark A. Lustgarten, after his 1999 death but backdated them, making it appear the grant was awarded when he still was alive.

during 1997-2002 discussed above are contrary to the high ethical standards they believe should apply to all of the Company's business practices."

By her complaint, Ms. Fulco alleges, *inter alia*, that Defendants violated state and federal law, including their breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, violations of Sarbanes-Oxley Act of 2002, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), which occurred between January 1, 1997 and the present (the "Relevant Period"). Compl. ¶ 2.[3]

Specifically, the Complaint alleges that Defendants' individual and collective wrongdoing resulted from, *inter alia*:: (i) their failure to discover and prevent the fact that Cablevision was improperly backdating stock option grants to the Company's top directors and officers, which enabled Company employees to enrich themselves by knowingly and fraudulently changing the stock option grant dates to dates on which the Company's stock price was lower than the actual grant date (and thus lower than fair market value on the actual grant date); (ii) their failure to properly implement, oversee and maintain appropriate and adequate accounting and internal controls, practices and procedures for Cablevision, namely concerning the administration of the Company's stock-based compensation plan; (iii) their failure to ensure that Cablevision operated in compliance with all applicable federal and state laws, rules, and regulations requiring the dissemination of accurate financial statements and restricting the misuse of material non-public information; (iv) their failure in allowing the Company's financial statements to be prepared in violation of Generally Accepted Accounting Principles ("GAAP"); (v) their failure to ensure that Cablevision not engage in any unsafe, unsound, or illegal business practices; and (vi) their failure to disclose, and the misappropriation and misuse of, proprietary

---

[3] For purposes of this motion, all references to the complaint shall be with respect to the Wolf Haldenstein complaint, *Fulco v. Dolan, et al.*, 06-cv-4180 (ADS), filed with this Court on August 18, 2006.

3

non-public material corporate inside information concerning the Company's inflated financial statements, which permitted certain Defendants to profit unjustly, and caused the value of the Company's net income and financial results to be materially overstated during the Relevant Period. These failures by Defendants resulted in Cablevision's need to restate the Company's financial results for fiscal years 1997 to 2002. Compl. ¶ 9.

The Complaint alleges that Defendants caused or allowed Cablevision executives to manipulate their stock option grant dates so as to illegally maximize their stock profits. In particular, certain Cablevision executives changed their respective stock option grant dates to take advantage of lower exercise prices than the price on the actual grant date. The price of Cablevision shares on the reported option-grant date, therefore, was lower than the share price on the actual day options were issued – thus, providing Defendants with more favorably priced options. Compl. ¶ 10. Specifically, Defendant James L. Dolan, the Company's Chief Executive Officer ("CEO") and son of the founder, Defendant Charles F. Dolan, Defendant Robert S. Lemle, the Company's former general counsel, Defendant William J. Bell, the Company's former Chief Financial Officer ("CFO"), Defendant Andrew B. Rosengard, the Company's former Executive Vice President of Finance, and certain past and present officers, have engaged in certain transactions, including the exercise of back-dated options, to reap millions of dollars in unlawful windfall profits at the expense of the Company. Compl. ¶ 3.

The backdating of these stock options brought an instant paper gain to these Cablevision executives because the options were priced below the stock's fair market value when they were actually awarded. Under GAAP, this instant paper gain was equivalent to paying extra compensation and was thus a cost to Cablevision. These costs were also not properly recorded. In turn, since these costs were not properly recorded, Cablevision's profits were therefore

4

overstated and ultimately resulted in a restatement of Cablevision's past financial results for several fiscal years. Compl. ¶ 12. In addition to breaches of fiduciary duty and accounting issues, the backdating of stock options can have extremely serious tax consequences. While stock options generally qualify for favorable tax treatment, options issued at a discount to the market price do not qualify for that treatment. Accordingly, backdated stock options are automatically disqualified from that favorable tax break, and Cablevision therefore owes millions of dollars in unpaid taxes. Compl. ¶ 13.

On August 9, 2006, *The New York Times* reported in an article titled "Cablevision to Restate Its Earnings," that Cablevision "filings show that more than 1.9 million options were granted from 1997 to 2002 to James L. Dolan, the chief executive of Cablevision, and other executives." Compl. ¶ 14. Defendants' wrongdoing has caused Cablevision to restate its financial results for fiscal years 1997 through 2002, which inflated the value of the Company's stock during the Relevant Period; face substantial tax and regulatory liability; exposed Cablevision to potentially substantial liability in the form of SEC investigations; caused substantial losses to Cablevision and other damages, such as to its reputation and goodwill, as well as the need to expend significant sums of money. Compl. ¶ 16.

### III. THE WOLF HALDENSTEIN AND FEDERMAN & SHERWOOD FIRMS SHOULD BE APPOINTED CO-LEAD COUNSEL IN THIS ACTION

Shareholder derivative actions are governed by Rule 23.1 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23.1. That rule contains no provision for the appointment of lead counsel. *Id.* Nonetheless, courts have routinely appointed lead counsel for such actions. *See, e.g., MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958).

Competing derivative actions and uncoordinated plaintiffs' counsel create a risk of inefficiency and inconsistent results. For that reason, courts commonly appoint lead counsel in

consolidated derivative actions to insure the smooth and efficient litigation of the matter for the sake of both plaintiffs and defendants. Here, a coordinated voice for the derivative claims is also needed in light of the parallel state court actions. In this case, potentially competing Plaintiffs' counsel, Wolf Haldenstein and Federman & Sherwood, have agreed to work cooperatively, and respectfully ask the Court to appoint them as Co-Lead Counsel.

The criteria for appointing lead counsel in shareholder derivative actions should be similar to those utilized in class actions. These factors are: "[1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i). In addition, courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii). These criteria, as well as the reasons below, all decisively point towards the approval of Plaintiffs' selection of Wolf Haldenstein and Federman & Sherwood as Co-Lead Counsel.

**A. Wolf Haldenstein And Federman & Sherwood Are Both Highly Experienced In Derivative Litigation**

Wolf Haldenstein and Federman & Sherwood are substantial and well capitalized firms. Both are fully capable and prepared to staff and finance this derivative action, including the document review, motions, depositions, retention of experts and trial. The firm biographies submitted in support of this joint motion demonstrate both Wolf Haldenstein's and Federman & Sherwood's vast experience in both derivative and class action litigation. *See* Exhibits A and B to the Declaration of Gregory Mark Nespole, submitted together herewith. Thus, the Court may be assured that Plaintiffs will receive the highest caliber of legal representation to vigorously

advance their interests.

Wolf Haldenstein is a leader in the derivative litigation field, and, in particular, has assumed leadership roles in several other stock option backdating actions. In fact, at present, Wolf Haldenstein has been appointed lead counsel in the stock option backdating derivative litigations for *Applied Micro Circuits Corp.*, pending in the Northern District of California; *Caremark, RX, Inc.,* pending in the Middle District Court of Tennessee; *Mercury Interactive Corp.*, pending in the Northern District of California; *Novellus Systems, Inc.,* pending in the Northern District of California; and *Xilinx, Inc.*, pending in the Northern District of California. Applications for leadership appointments in several other stock option backdating cases are also currently pending.

In addition, Wolf Haldenstein is currently lead counsel in some of the most significant derivative actions pending in the United States, including, *inter alia*: *Alliance Capital Management Mutual Fund Derivative Litigation*, 03-CV-5345 (E.D.N.Y. 2003); *Fred Alger Mutual Fund Derivative Litigation,* 03-5958 (E.D.N.Y. 2003); *In re R&G Financial Corp. Derivative Litigation,* 05-5547 (S.D.N.Y.); *American International Group, Inc. (AIG) Consolidated Derivative Litigation,* C.A. No. 769-N (Del. Ch.); *In re Tyco International Ltd. Derivative Litigation*, 02-352-B (D.N.H.); *Strong Financial Corp. Mutual Fund Derivative Litigation*, 03-C-862 (E.D. Wis. 2003); *Janus Capital Management Mutual Fund Derivative Litigation*, 03-5048 (E.D. Pa. 2003); *Bank of America Corp. Mutual Fund Derivative Litigation*, 03-CV-4446 (D.N.J. 2003); *Putnam, LLC Mutual Fund Derivative Litigation*, 03-CV-12227 (D. Mass. 2003); *Federated Mutual Fund Derivative Litigation,* 03-1942 (W.D. Pa. 2003); *Massachusetts Financial Services Company Mutual Fund Derivative Litigation,* 03-12483 (D. Mass. 2003); *Pilgram Baxter Mutual Fund Derivative Litigation,* 03-6522 (E.D. Pa. 2003);

*Invesco Mutual Fund Derivative Litigation,* 03-MK-2408 (D. Colo. 2003); and *In re Qwest Communications International Inc. Derivative Litigation*, 19826-NC (Del. Ch.).

Wolf Haldenstein partners Lawrence P. Kolker and Gregory M. Nespole, who are the lead partners assigned to this case, have worked on numerous matters generating significant case law concerning the nature of derivative claims, the contours of the "demand" requirement, and the fiduciary duties of corporate executives in derivative litigations. *See, e.g.*, *Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994); *City Partnership Co. v. Cable TV Fund 14-B,* 213 F.R.D. 576, 589-90 (D. Colo. 2002); *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1374 (N.D. Ga. 2000); *Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999).

Likewise, Federman & Sherwood is a boutique law firm handling securities and shareholder litigation and has been actively involved in the successful prosecution of such cases throughout the United States. Federman & Sherwood possess extensive experience in the area of shareholder derivative and complex commercial litigation matters. Federman & Sherwood has been appointed Lead (class and derivative) Counsel in numerous actions pending in state and federal courts nationwide and has provided highly effective case management and guidance as Lead, Co-Lead and Liaison Counsel in many derivative and other complex litigation.

In addition to being a Martindale Hubbell "AV" rated law firm, members of Federman & Sherwood have broad experience in shareholder derivative litigation and have represented shareholders in class and derivative actions for over 20 years. Further, the Institutional Shareholder Services officially recognized Federman & Sherwood as one of the Top 50 plaintiffs' law firms in the United States. This recognition was based upon the total dollar amount of final securities class actions settlements during 2005 in which Federman & Sherwood served as lead or co-lead counsel. In addition to representing plaintiffs, Federman & Sherwood

8

attorneys have over 20 years of trial experience representing plaintiffs and defendants in securities actions as well as in other types of complex litigation. Messrs. Federman, Sherwood and Heggy of Federman & Sherwood have a combined experience of over 70 years of trial and litigation experience (representing both plaintiffs and defendants) in various state and federal courts. The firm has substantial litigation support staff consisting of forensic accountants, paralegals and document clerks.

Federman & Sherwood has been recognized by many courts for the quality of its representation, and has demonstrated its ability to serve in a lead role. Further, Federman & Sherwood was able to secure significant corporate governance changes in *Chan v. Diamond* (S.D.N.Y. 03-CV-8494-WHP), which the court there described as "sensible reforms that Alloy was unlikely to implement on its own" and that "provide a substantial non-monetary benefit to the company." Further, Federman & Sherwood has demonstrated its ability to successfully prosecute derivative actions when demand futility is an issue. Two recent decisions, *Felker v. Anderson* (W.D. Mo. 04-CV-372) and *Mehlenbacher v. Jitaru* (M.D. Fla. 6:04-CF-1118-ORL-22KRS), demonstrate Federman & Sherwood's ability to overcome motions to dismiss based on demand futility, along with its ability to prosecute available claims seeking corporate governance changes even when no securities fraud case exists.

**B.**   **Wolf Haldenstein Is a Well-Established New York-Based Litigation Firm**

Principally located in New York City, with additional offices in Chicago, Illinois, San Diego, California, and Washington D.C., Wolf Haldenstein is recognized nationwide as one of the country's premier class action firms and is in a position to dedicate substantial resources to this Action. The firm, founded in 1888, has a Class Action Litigation Group consisting of more than 35 lawyers with many years of class action experience and 10 paraprofessional assistants. Moreover, several partners from Wolf Haldenstein's other departments, including

pension/ERISA, and tax attorneys, regularly consult with and advise Wolf Haldenstein's litigators in cases such as this one.  Wolf Haldenstein's experience in class action securities litigation is particularly extensive.  The firm has been lead or primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations and limited partnerships.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Court enter an order consolidating these related actions, organizing this Consolidated Action, and approving their selection of Wolf Haldenstein and Federman & Sherwood as Co-Lead Counsel.

Dated:  September 27, 2006

*Respectfully submitted,*

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**

    /s__ Gregory Mark Nespole_____
Gregory Mark Nespole, Esq. (#GN-6820)
Lawrence P. Kolker, Esq. (#LK-6432)
Robert B. Weintraub, Esq. (#RW-2897)
Paulette S. Fox, Esq. (#PF-2145)
270 Madison Avenue
New York, New York  10016
Telephone:  (212) 545-4600
Facsimile:  (212) 545-4653

**FEDERMAN & SHERWOOD**
William Federman, Esq.
10205 N Pennsylvania
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimlie: (405) 239-2112

**ATTORNEYS FOR PLAINTIFFS**

452365v3